IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED
JAN - 3 2006
WILLIAM B. Guthrie
Clerk, U.S. District Court
By:_____
Deputy Clerk

DONALD C. GILMORE,             )
                               )
              Plaintiff,       )
                               )
v.                             )   Case No. CIV-04-570-WH
                               )
JO ANNE B. BARNHART,           )
Commissioner of Social         )
Security Administration,       )
                               )
              Defendant.       )

### FINDINGS AND RECOMMENDATIONS

Plaintiff Donald C. Gilmore (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 2, 1945, and was 59 years old at the time of the hearing. He has a 12th grade education. Earlier in his life, Claimant worked as a construction worker. Claimant alleges an inability to work beginning March 15, 2001, due to status post remote right ankle fracture, lumbar degenerative disc disease, major depression, border-line intellectual functioning, and a history of alcohol abuse.

### Procedural History

On December 20, 2002, Claimant first applied for disability benefits under Title II (42 U.S.C. § 401, *et seq.*). Claimant's

application for benefits was denied in its entirety initially and on reconsideration. A hearing before ALJ, Larry M. Weber was held on March 17, 2004 in Hugo, Oklahoma. By decision dated May 7, 2004, the ALJ found that Claimant was not disabled at any time through the date of the decision. On November 12, 2004, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four and five of the sequential evaluation. He determined that Claimant retained the residual functional capacity ("RFC") to perform a significant range of medium work. The ALJ further found Claimant could perform a significant number of jobs in the national economy such as a rural mail carrier so as to deny his disability.

## Review

Claimant asserts that the ALJ erred in finding he possessed an RFC to perform medium work when substantial evidence does not support such a finding.

## Residual Functional Capacity

Claimant contends the ALJ failed to discuss the findings by treating physicians at various times relevant to the ALJ's inquiry which concluded Claimant had a Global Assessment of Functioning ("GAF") ranging from 21 to 50. Claimant contends the ALJ's

conclusions in the specific area of assessment of his mental impairments is not supported by substantial evidence.

The ALJ relied, in part, upon the conclusion of a non-examining consultant from Disability Determination Services who determined Claimant suffered from depression, but he had only moderate impairment of function in the areas of "activities of daily living", "social functioning", and "maintaining concentration, persistence or pace." (Tr. 40). The ALJ found the DDS examiner found Claimant had experienced only one or two extended episodes of decompensation.

The ALJ also recognized Claimant's depression, but indicated his "symptoms are fairly well controlled with medication on an outpatient basis." (Tr. 40). The ALJ states the record reveals Claimant received treatment between May 16, 2002 and May 17, 2002 after "an apparent suicide attempt", but that he agreed not to drink alcohol and to only take Celebrex as prescribed. The ALJ concluded Claimant's subsequent mental impairment testing was "unremarkable" and states none of this testing indicates Claimant is unable to work.

The ALJ's failure to discuss Claimant's past GAF causes this Court considerable concern, given the significant and consistent level of deficiency indicated. On January 26, 2001, Claimant was diagnosed with major depression, recurrent, severe, with psychotic features, alcohol dependency, and schizo affective disorder when he sought treatment at the Austin-Travis County MHMR. (Tr. 493). At

5

that time, a GAF was attributed to Claimant of 50. (Tr. 493). On August 6, 2001, Claimant was reportedly suicidal. (Tr. 473). On September 27, 2001, Claimant again received a GAF of 50. (Tr. 467). On May 16, 2002, Claimant was admitted to the Huntsville Memorial Hospital, based upon an attempted suicide. (Tr. 302-04). On March 24, 2003, Claimant was assessed with a GAF of 45. (Tr. 451).

Moreover, on March 12, 2003, Claimant was assessed at the Freeman Center at his request in an attempt to support his application for benefits. In summary of the testing performed on Claimant, he was assessed at a GAF of between 21 and 30. The examiner concluded "[t]hese results make it likely that Mr. Gilmore will have considerable trouble managing day-today-tasks (sic) and functioning effectively at a job." The ALJ concluded with regard to this report that "[t]he objective results of this consultative psychological evaluation were not particularly remarkable, and do not support a conclusion that claimant is unable to work."

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of

6

non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, supra at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000). A GAF of between 21 and 30 indicates "[b]ehavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day; no job, home or friends)." Given the consultative evaluator's assessment of a GAF in this latter range coupled with her findings with regard to Claimant's ability to function in employment and the prior low GAF assessments, the ALJ will be required to explain his rejection of these assessments beyond the cursory dismissal contained within his

opinion. As a result, the ALJ's decision is not supported by substantial evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and **REMANDED** for further administrative proceedings as set forth herein. Parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 3rd day of January, 2006.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE